UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CRISSY ALLEN** | **CASE NO. 2:25-CV-01313** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **PINNACLE ENTERTAINMENT INC** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 16] filed by defendants Pinnacle Entertainment Inc., d/b/a L'Auberge Casino & Resort ("Pinnacle"), and PNK Lake Charles LLC ("PNK"). Plaintiff opposes the motion. Doc. 20.

I.
BACKGROUND

This suit arises from an alleged trip-and-fall on July 19, 2019, at L'Auberge Casino and Resort in Lake Charles, Louisiana. Plaintiff, a patron at the casino, alleged that she tripped on a "crack in the floor or other tripping hazard" and sustained injuries. Doc. 1, att. 2, p. 5. She filed suit against PNK, Pinnacle, and Pinnacle's insurer, Zurich American Insurance Company ("Zurich"), in state court in January 2020, raising tort claims under Louisiana law. Zurich, which was first substituted for the fictitious entity ABC Insurance Company via second supplemental and amended complaint filed in August 2025, removed the matter to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Doc. 1. Zurich has separately moved for dismissal of the claims against it, arguing that they are barred by Amendment 275 to Louisiana's Direct Action Statute. Doc. 15.

Pinnacle and PNK now bring this motion for summary judgment, noting that the only defect in the area of the floor where plaintiff tripped is a slight deviation of the slope. They argue that this does not rise to the level of a hazardous condition under the Louisiana Merchant Liability Act. They also maintain that plaintiff improperly named Pinnacle, as PNK's corporate parent, as defendant. Doc. 16, att. 6. Plaintiff opposes the motion, maintaining that the case presents a "battle of the experts" as to whether the condition of the floor created an unreasonably dangerous condition. Doc. 20.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity jurisdiction applies the substantive law of the forum state. *E.g.*, *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 687 (5th Cir. 1991). In Louisiana, claims against merchants based on falls on the premises are governed by the Louisiana Merchant Liability Act ("LMLA"), Louisiana Revised Statute § 9:2800.6.[1] To prevail, a plaintiff must prove the following (in addition to all other elements of his claim): (1) a condition on the premises presented an unreasonable risk of harm; (2) this harm was reasonably foreseeable; (3) the merchant either created or had actual or constructive notice of the condition; and (4) the merchant failed to exercise reasonable care. La. Rev. Stat. § 9:2800.6(B); *White v. Wal-Mart Stores, Inc.*, 699 So.2d 1081, 1084 (La. 1997). Failure to prove any of the elements enumerated in La. R.S. § 9:2800.6 is fatal to a plaintiff's case. *Harrison v. Horseshoe*

---

[1] A casino qualifies as a merchant for the purposes of this statute. *E.g.*, *Olivier v. Belle of Orleans, LLC*, 341 So.3d 774, 777 & n. 3 (La. Ct. App. 1st Cir. 2022).

*Entm't*, 823 So.2d 1124, 1128 (La. Ct. App. 2d Cir. 2002) (citing *White v. Wal-Mart Stores, Inc.*, 699 So.2d 1081 (La. 1997)). Although the owner of a commercial establishment has an affirmative duty to keep the premises in a safe condition, he is not the insurer of his patrons' safety and is not liable every time an accident happens. *Ferlicca v. Brookshire Grocery Co.*, 175 So.3d 469, 472–73 (La. Ct. App. 2d Cir. 2015).

As a threshold matter, the court determines whether plaintiff has presented sufficient evidence to establish that a condition on the merchant's premises caused her fall. La. R.S. § 9:2800.6(B); *see also Donaldson v. Sam's E., Inc.*, 2021 WL 4898724, at *3 (5th Cir. 2021) (citing *Waterman v. Acadiana Mall CMBS, LLC*, 269 So.3d 789, 800 (La. Ct. App. 3d Cir. 2019)). "[S]peculation as to what caused an accident cannot supply the factual support necessary to show that a plaintiff would be able to meet his evidentiary burden of proof at trial." *Tomaso v. Home Depot, USA, Inc.*, 174 So.3d 679, 683 (La. Ct. App. 1st Cir. 2015). Additionally, "a court may rely on video evidence to resolve any claimed genuine disputes of material fact and rule on summary judgment." *Hodge v. Engleman*, 90 F.4th 840, 846 (5th Cir. 2024).

The incident occurred at about 9:38 pm, as plaintiff was walking on the main floor of the hotel, after meeting her daughter and shopping for food to bring back to their room. Plaintiff maintains that she stumbled and fell because of a deviation in the slope of the floor in a corridor on the premises. Surveillance video establishes that the incident occurred in a high-traffic corridor of the casino, and that a group passing in the opposite direction walked over the same spot without incident just before plaintiff. Plaintiff herself acknowledged that she had walked in that area before without issue. Doc. 16, att. 3, p. 34. Video from

minutes earlier shows plaintiff shopping, and that her shoes are a pair of flip-flops that allowed her heel to rise out of the shoe as she walked. When plaintiff fell, her shoes came off. *Id.* at 27.

The corridor where the incident occurred has a wood floor that is covered in some parts with large, rectangular inlaid carpets. Plaintiff stumbled on the wood floor and described the area as follows:

> **A.** When you're walking through there, there's—how the wood gets like real dark in certain spots, there's a line that goes across and it looks like . . . splinters have come up out of it, almost like there's –I don't want to say a hole, but I don't know how to describe it. It's just like where it's raised a little bit, maybe like where the wood planks have separated a little bit.
> . . . .
> And that's—that's where my foot got caught or—
>
> **Q.** Do you know how—what the difference in height would have been between the wood planks? Was one plank raised more than the other?
>
> **A.** The one where the thing starts, the one that's on this side of it, you can see like a little lip there.
> . . . .
> **Q.** When you went back to look at it, was it obvious to you or was it hard to see?
>
> **A.** It was obvious.

*Id.* at 33–35. But the actual defect, as documented in photographs attached to the incident report, is not a lip or separation. Instead, it is a very thin dark seam between two boards that appears sealed along with the rest of the floor. *See* doc. 20, att. 3, pp. 92–100 (incident report photographs). Plaintiff's expert, Dr. Neil B. Hall, produced a report in November 2024, over five years after the incident, based on the available video and documentary evidence. He opined:

> Ms. Allen's fall was not a trip but rather a misstep, *i.e.*, having established her gait (length of each step and rate of speed) while walking on the inclined surface, Ms. Allen likely misjudged the horizontal and vertical distance to negotiate the step across the change in floor slope, causing the fall. This is in no way Ms. Allen's fault, as the flooring material is the same on both sides of the change of slope, the crack (actual the separation at the change in slope) coincides with the butt joint between adjourning [*sic*] wood strips, and the inlaid carpet is of greater interest within the pedestrian's cone of vision.

Doc. 16, att. 5, p. 2. Dr. Hall visited the site and documented the deviation in slope as 3/16 inch. Doc. 16, p. 10. Plaintiff does not dispute this measurement. Doc. 20, p. 14.

Dr. Hall presents numerous opinions on safety standards for walkways. But the court has no need for expert guidance on common sense matters such as tripping hazards and the avoidance thereof. *See Nunez v. Dolgencorp*, 2013 WL 2458736, at *4 (W.D. La. June 6, 2013) (collecting cases). Instead, the undersigned finds based on common knowledge and experience that a 3/16 deviation in slope on a wooden floor, with no other obstacles, does not present an unreasonable risk of harm.

Plaintiff's belief that such a small deviation, rather than her ill-fitting shoes, caused her stumble appears speculative at best. But even if she could show that she stumbled because of the floor, it is not sufficient to establish defendants' liability. An "unreasonable risk of harm" is only present "if the dangerous condition would **reasonably** be expected to cause injury to a prudent person using ordinary care under the circumstances." *Pistorius v. Higbee La., LLC*, 356 So.3d 1204, 1208 (La. Ct. App. 2d Cir. 2023) (internal quotations omitted; emphasis added). "The mere presence of a defect does not alone elevate that defect to the level of an unreasonably dangerous condition." *Ferlicca*, 175 So.3d at 472. And "the mere fact that an accident occurred because of a vice or defect does not elevate it to an

unreasonably dangerous vice or defect." *Milton v. E&M Oil Co.*, 47 So.3d 1091, 1095 (La. Ct. App. 2d Cir. 2010) (citing *Lasyone v. Kansas City Southern R. Co.*, 786 So.2d 682 (La. 2001)). In this matter the deviation is so slight, and so easily traversed, that the court cannot find any liability on the part of defendants to the extent that the flooring played a role in plaintiff's accident.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 16] will be **GRANTED** and all claims in this matter will be **DISMISSED WITH PREJUDICE**. The ruling inures to the benefit of all defendants.

**THUS DONE AND SIGNED** in Chambers on the 10th day of December, 2025.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE